13-1493, Kimberly Clark Worldwide, Inc. v. First Quality Baby Products We appreciate your patience all morning. Mr. Trello, whenever you're ready. May it please the Court. I guess it's good afternoon at this point. This appeal involves three summary judgment rulings with respect to three Kimberly-Clark patents. Now this case has been here before, but these patents have not. The summary judgment rulings were a summary judgment of non-infringement with respect to the 221 patent, and summary judgment of invalidity with respect to the 067 patent based on obviousness, and the 119 patent based on anticipation. I'd like to begin with the non-infringement ruling on the 221 patent, and I'd like to begin with Claim 15 of that patent, one of the two independent method claims at issue. Claim 15 claims a method for making a pant. It provides for a number of steps, including folding a pant chassis, transporting the folded pant chassis in a machine direction, and moving first side panels in a Z direction, which is a direction perpendicular to the machine direction. Now the District Court held that the claim step requiring this Z direction movement must be performed after the pant chassis is folded, and the Court also held that this folding step required complete folding. That is, when the claim says folded pant chassis, it actually should be read to say completely folded pant chassis, or pant chassis that has been folded in half. Now these claim construction rulings we submit were incorrect. The claim language does not require either that folding come first or that any such folding result in a pant chassis that has been completely folded. Now as for the order of the steps, as the Court knows, the general rule is that unless a claim expressly requires a specific order, or does so by necessary implication, the claims aren't read to require an order. Claim 15 does not expressly require that the side panels be moved in the Z direction only after the pant is folded, and it certainly does not unequivocally preclude the reverse order, which as this Court has held in Baldwin, Graphic, and other cases, is what you have to have before you impose a particular order. Now the claim requires that the chassis be folded and that the folded chassis be transported. It also requires that the side panels be moved in the Z direction while being transported on side panel transfer devices. Nothing in the claim ties those two steps together, or requires that one take place before the other. Now the claim does require that side panels be moved on the transfer devices while the folded chassis is being transported, but it doesn't say that they can be moved on the side panel transfer devices only while the folded chassis is being transported. Nothing in the claim says that the side panel movement can't be independent of the movement of the chassis. And in fact, First Quality in its brief at page 46 says, the vertical movement of the back side panels is independent of the movement of the rest of the training pant, and that's correct. Now the specification doesn't require the particular order either. The specification in fact at column 3 expressly provides that the side panels can be engaged simultaneously with folding the pant. Now for the side panels to be engaged, that means that the Z direction movement has already occurred, since that's what brings the fastening components together. So if the side panel engagement can occur simultaneously with folding the pant, that means the Z direction movement necessarily occurred either before folding or while the pant is being folded, and that actually is the way First Quality does it in its process. And this underscores the fact that there's no technical or logical reason why the side panels must be moved only after the pant is folded. The process will work. It will produce a pre-fastened, refastenable training pant either way. Now this is in contrast to some of the other steps, which do have to be performed in a particular order. For example, the last step of Claim 15 expressly says that the second side panels should be folded prior to engaging the first and second side panels, a clear requirement of a particular order. Also, you can't move the side panels together after you've engaged them. They're already together so it doesn't make any sense to talk about moving them together after engagement. But that's not true of the folding and moving in the Z direction steps. Now the court not only held that folding must occur first, but it also held that the folding must be complete. That is, that the pant must be folded completely in half. The court found non-infringement because Z direction movement in First Quality's process, as I noted, occurs after its folding starts but before the pant chassis is completely folded. Now expert testimony established that one of ordinary skill in the art would not interpret folded pant chassis to require a completely folded pant chassis. That alone should have precluded summary judgment here, but instead the court held that the claim required complete folding because it talks about being folded so that the opposing sides or the side panels are in a facing relation. But that really begs the question because two things can be in a facing relation without necessarily being exactly parallel to one another or directly opposite one another. The normal meaning of facing is positioned with the front facing toward a certain direction and nothing about the term facing relation dictates that a pant is folded only where one side is absolutely parallel to or opposite the other one. This talks about the side panels facing each other, right? In a facing relation to each other. Two things that are in a facing relation. Correct. Correct. Are you and I in a facing relation now? We are. You and I in a facing relation now? I think if I'm standing, Your Honor, if I'm standing like this, I think we're in a facing relation. Am I facing you? Doesn't a facing relation suggest that each party is facing? It suggests that oriented in a... We're in a facing relation. Oriented in a particular... Now I'm not facing you. Am I? Well, frankly, I think it's a matter of degree and I think that's a question for the jury. I think, and if you look at page 13 of our reply brief, I think it actually is a good example. You have two pictures of first qualities process, literally milliseconds apart. One is a reproduction of a picture that was in their brief and it shows the side panels, you know, basically very far apart, not oriented toward each other, but not even a split second, less than a split second later, they are angled toward each other. And we would submit that that is at least sufficient to present a jury question as to whether the two things are in a facing relation. The patent, the claim does not say opposite, does not say fold it in half and fold it in half... My recollection was that the iterations in the patent showed facing relation to mean facing relation as you and I are facing each other now. Certainly, some of the drawings in the patent do say that, Your Honor, and there's no question about that. Those are specific embodiments. The patent also uses the term folded in half to describe certain embodiments, but that's not what the claim says. The claim says in a facing relation and it doesn't define facing relation to mean folded in half or completely opposite, which clearly could have and should have been done if that was the intention. So we submit that that question, again, whether they are oriented toward each other enough to be in a facing relation is a jury question, not a summary judgment question. So I'm claiming... It's a claim construction, that's not a jury question. I'm sorry, Your Honor? It's a claim construction. Claim construction issue is not a jury question. Claim construction issue is not a jury question. That's right. What happens to your case if I disagree with you and I say in a facing relation means directly facing and completely folded? If as a matter of claim construction, if you believe that in a facing relation means completely folded in half, directly opposite, then there's not literal infringement. That's correct. The way that... But subject to what I'm about to say, which is the district court also said that folded means completely folded. So we think that there would be... There should be a doctrine of equivalence claim here. Now, the court did not let us amend the contentions after announcing this construction in the summary judgment. Equivalent of completely folded, you mean? Yeah, correct. Correct. And we submit that certainly, particularly in this... Do you have an abusive discretion standard on that rule? It is an abusive discretion standard. We concede that, Your Honor. Now, but here the specification talks about, as I mentioned before, engaging simultaneously with folding. And so that supports the view that it doesn't require that the folding be You can't engage simultaneously with folding unless you've already moved them together. So that necessarily occurs either before folding or with folding. If I could turn, if there are no further questions on that one, if I could turn briefly to the 067 patent. Now, this is a patent that the district court held invalid for obviousness, and again, on summary judgment. It did so by resolving disputed issues of fact against Kimberly-Clark, and by falling into really the precise hindsight trap that this court has repeatedly warned about. And it happened because of the way the court, the district court, dealt with Objective Indicia. It really treated them in... What difference does it make? What difference does it make, Your Honor? I mean, the Novo review. What difference does it make that the district court might have said something that you think is incorrect? Well, the Novo review, I still have to show error, Your Honor, I think. So that's... But we look at the summary judgment record and decide whether the district court properly granted summary judgment. So what if the district court said something that's wrong? Okay, well that's... It's not like the fact finder is using the wrong standards. Fair enough, Your Honor. Then let me turn directly to that. And I'd like to focus on the Objective Indicia. That's obviously been the focus of the argument. It's undisputed, to take one example, to start with commercial success, it's undisputed that Kimberly-Clark's commercial product practices the patent. The district court found a nexus between the invention and the commercial success. But the court nevertheless held that the evidence was irrelevant because it found that the... It had already found that the invention was obvious. That just turns the analysis on its head. It becomes completely certain. But then you're talking about the analysis. I mean, we have plenty of cases that say that if there's a prima facie case of obviousness that commercial success is not necessarily going to overcome that, right? Well, that's correct. Very rarely on summary judgment, though, Your Honor. Most of those cases, most of the cases cited by my opponent are after trial. So that's a different situation. But I certainly... We're not saying that you can never get summary judgment of obviousness where there is evidence of Objective Indicia. But here, we have nexus, the product practices the patent, enormous commercial success, so... District court judge said the commercial success was attributable to something that was in the prior art. Right. And that gets into... And I know, Judge Dyke, you don't want me to talk about the district court... What happens if you just said... I'm not telling you about the answer, Judge. I'm just asking. Well, I just wanted to make sure I didn't get into trouble. What would happen if the district court judge said, well, this commercial success is attributable to something that was in the prior art? But what was in the prior art hadn't invalidated your patent? Well, I guess I wouldn't be complaining. You're working through... District court finds a prima facie case based on reference A and B. But then the district court says, well, your commercial success is due to reference C, hasn't been cited. Look at that. And you have testimony that says, well, the reason why everybody bought this particular thing is because of this feature, and the feature was in the prior art. Well, that commercial success would be undermined, right, for significance. Perhaps, right. So who cares whether the district court judge used that reference to make a prima facie case in terms of weighing that reference for purposes of whether or not the commercial success argument has any merit? Well, I think there are a couple of problems. And again, since you asked me in terms of the district court's analysis, I'll answer in terms of the district court's analysis. One problem is the court didn't look at the claim as the claimed invention as a whole, which this court's cases say you should. And the other problem with it is what the district court did was say, OK, I find that these two pieces of prior art made the combination obvious. And because of that, because I found that, I'm going to dismiss this evidence of commercial success. Well, if you think about the prima facie case and then rebuttal form of analysis, you can never rebut a prima facie case if that's the way you look at it. If you say, well, I've already found this, and therefore, I'm not going to consider this other evidence of objective indicia. It becomes self-fulfilling and completely circular. And the court did that on several occasions. It did that with industry skepticism. It said industry skepticism seems more likely due to other factors, including the presumed obviousness that the court had already found. It just turns the analysis on its head. And beyond that, they're also just thinking about this in terms of summary judgment. The court did things like said that the commercial success. I'm trying to figure out how the district court judge could have done it. I think he would have reached the same result. And then I wonder what your argument would be. Let's say instead of the district court having said there's a prima facie case or whatever he said, he said, you know, I'm going to reserve judgment on whether or not I think the patent on the references is problematic. I'm going to listen to all the argument about commercial success and hear that. And then afterwards, the district court said, well, your problem with your commercial success is that I think that the prior art references teach what this was. And that was the reason for the commercial success. Is there error then? Well, on this record, I think there would be, Your Honor. Now, admittedly, the way- Meaning procedural error. Procedural error. Well, I think the procedural error would be- Part of your argument here is the district court did a two-step operation, should have done a one-step operation. That's part of it. But I don't want to be misunderstood. We would be making the same argument even if the court had not. Now, the court, because of the way he expressed his analysis, made it very clear how he was proceeding. But I think on this record- I don't understand what you just said. Are you claiming error by the way he proceeded because he discussed the prima facie case and then turned to the consideration of the objective indicia? I wouldn't put it quite that way. But in several places, he said, I conclude that the claims are obvious. Now, let me turn to the objective indicia. Indicating that looking at the objective indicia, he's got to look at those before he reaches this ultimate conclusion of obviousness, right? Well, and that's what he ultimately did. It's not like he said, I'm going to enter judgment now before looking at the objective indicia. Clearly, he looked at the- He spent pages and pages looking at the evaluating. You might disagree with his evaluation, but he certainly didn't ignore the objective indicia. No, he absolutely did not ignore them. But I would say two things. One is the way he looked at them and the way he dismissed them based on, basically based on, let's say the prima facie case. I think it's not the right way to look at objective indicia. It makes it impossible to rebut a prima facie case. The other thing, putting aside the specific framework for analyzing obviousness, just as a matter of summary judgment, he clearly drew inferences against Kimberly-Clark and we were the non-movement. He said things like, it equally may be true that Tyco abandoned its effort to develop this kind of pant for reasons other than technical difficulty. Well, if two things equally may be true, on summary judgment, the non-movement is supposed to get the benefit of that doubt. You don't resolve equally may be true type or it seems more likely this than that type questions on summary judgment. Those are issues for trial. I believe that I have run over. Yes, you have. Will we start two minutes of rebuttal and we'll add three minutes to the other side to keep it even if you need it. May it please the court, I'd like to start with claim 15 as well. I'd like to start with this issue of completely folded and facing relation. And there's a part of the claim that the district court pointed out in his motion when he denied Kimberly-Clark's motion for reconsideration that I think really answers the question that the claim does require the pant to be completely folded. So the first, you have a folding step, which is folding the pant chassis about a fold line, extending in a lateral direction through the crotch region, thereby positioning the waist regions and first and second side panels and facing relation. So here's the pant. We folded it. Here's the crotch. That's the first thing the claim talks about. Here are the side panels. They're connected here, but normally they wouldn't be. And they're in facing relation. Now, the claim goes on to give us more information on this facing relation. The very next step says, transporting the folded pant chassis, which we've just folded, in a machine direction, thus defining a pant transport plane. And why is that pant transport plane important? Because the Z direction, which we hear about later, has to be perpendicular to the pant transport plane. Well, to define a plane, you need the product to be completely folded to define a single plane. And to define a Z direction that's perpendicular to it, the only way you're gonna do that is with a completely folded pant. The pictures in the brief where Kimberley talked about- Let me just make sure that we're okay. Was this an exhibited trial? Is this part of the record, the diaper that you're using, the pant that you're using to demonstrate? Did the other side have any problem with rejecting to the- We do not, Your Honor. Thank you. Okay, so you've got a folded pant, and you know what the Z direction is relative to the folded pant. Right. That's where we interrupted you. And if you have a partially folded pant, number one, you don't have a plane. You have multiple planes. And number two, since you don't have a plane, you can't define a Z direction. And the court, in denying Kimberley Clark's motion for reconsideration, went right to this and explained this and said, you need this pant to be folded, because if it isn't folded, completely folded, you can't define a single pant transport plane. And if you can- Well, I have mine that's not completely folded. If it's just open a tiny little bit, why can't you still define a plane? If it's open, the way these products are made, they're coming around a circular roller. So until they're completely folded, there's always going to be a curve to it. And the definition of plane is flat? I mean, a plane which was not in dispute below, it's basically, you know, a sheet of paper. As flat as you can get that thing. Exactly right, Your Honor. Yes. So based on the claim language, there's really no issue that the pant has to be completely folded. So following through that notion of a folded plant within a plane with a Z direction, why is there no literal infringement? Because the claim specifically requires that the Z direction movement occur on a folded pant. And the court found that by the time First Quality's pant is folded, there's no Z direction movement. Now I have another slide that's just pictures from the brief where I can explain this, the first one. And this is from pages 42 to 45 of the brief. So what the 221 patent teaches is, is you fold the diaper, and then you have hook fasteners that face outward and loop fasteners that face inward. And you have this distance here. And what happens is the very next, the next thing you have to do is invert the hook fasteners and still have this distance. And then you need to bring the loop fasteners into engagement. Now we've heard in Kimberly-Clark's brief over and over again, that the patent has one sentence in the beginning that says that you can fold and simultaneously engage. And that's all you're gonna find in that patent on that subject. There is absolutely no teaching of how you're gonna accomplish that. And the teaching, what Kimberly-Clark points to, frankly, is First Quality's method. There is absolutely no teaching, there's no figure, there's no specification, there's nothing that ever tells you how you can fold this pant and simultaneously engage these two things, the hook fastener and the loop fastener. To the contrary, the teaching is always that the hook fasteners are gonna be facing outwardly, and then you're gonna have to invert them, and then you have to bring them together with side panel transfer devices. In fact, interestingly enough, the patent, there's two different machines. One machine folds it, and the other machine inverts it and brings it together. And the two machines are shown in figure three and figure eight of the patent. And everything that the claim talks about is figure three. That's where the inversion happens, that's where the Z-direction movement happens, that all happens here. And it happens always on a folded pant. And we know that because, one, the claim says it, and two, figure eight is the folding. This is where the folding occurs. The patent never explains how you could move the machine of figure three before figure eight. There's absolutely no teaching of that. This is a sentence that, frankly, you read it, you're not sure exactly what it means, and then when you read later in the specification, the only point where it talks about it some more is it says, sometimes you could secure both of these side panels at the same time, and sometimes you could do them sequentially. And I think that's really what it was referring to. But it doesn't really matter, there's no teaching. And not only that, the claim always talks about you're folding it, you're inverting it, you're doing Z-direction, and then you're mating the hook and fasteners. And if you folded it and you mated it, you wouldn't need the rest of the claim. So whatever this embodiment is, it does not read on claims four and 15. I'd like to talk about the 067. Also, one other thing, on supplementation of claim 15, the court, the issue of completely folded or not was clearly at issue. In fact, Casey's expert, in his report, took the position that there's nothing in the claim that says it has to be completely folded. He took that position. And then he didn't offer any DOE argument after that. So this is something that clearly was an issue, they clearly had notice of it, they clearly knew our position, and they could have done something and they didn't. And under the case law, there's no abuse of discretion here. Turning to the 067 patent. Why is Mr. Trella not right that there's a problem when the district court, in analyzing commercial success, goes back and uses the prior art to sort of rebut that? Isn't that kind of a circular, sort of never can win type of analysis? I don't believe so. And I believe, you know, there's a case that they cite, the Leo Pharma case. And in that case, it's very instructive. The prior art didn't recognize the problem. The prior art didn't recognize the solution. Were the various compounds around? Yes. And they were put together for the first time by the inventor. And nonetheless, the district court said, well, this is obvious. And it was reversed. And that's not what we have here. We have a prior art patent, Lafleur, that recognizes the same exact problem that the 067 patent recognized. And that is, if you have a training pant with sealed sides and you go to take it off, there's a chance you're gonna spread the soilage down the child's leg. And that's what 067 says, and that's what the prior art Lafleur patent says. And then the next step, the next thing that Lafleur taught was, take, get rid of those permanent seams and put in hook and loop, Velcro. And this way you can take the product off and you've solved the problem. So here we have a situation where the exact same problem was addressed by the prior art. It gave the exact same solution as the 067 patent. Well, that's typically your case. If you get, I mean, under an analysis where you first decide whether there's a prima facie case, you found that there was a motivation to combine and you've got one or two references and combined, there's a problem. That's always the case before you get to commercial success, that you've made that determination that there's at least a strong showing. It's always the case, but what I think is not always the case, and that's illustrated by the Leo Pharma case that Kimberly-Clark cites. You don't always have a situation where the exact same problem was recognized and the exact same solution was proffered. I guess what you're saying is if a patent is on the combination of A and B, and A existed in the prior art and B existed in the prior art, but the combination didn't exist in the prior art, in order to show commercial success, you'd have to show that the commercial success was due to the combination rather than either one of the two things that existed in the prior art, right? Exactly, that's another way. And that's actually germane to one of the issues on this appeal. Down below, all the evidence that was put forward was that the nexus between the secondary considerations and the claim was the refastenable seam. And that is clearly in- Rather than the combination of the refastenable seam and the elastic side. Exactly, now on appeal, for the very first time, we're hearing that, oh no, no, it's the invention as a whole, it's the combination with the elastic side panels. That was not below, and when we look at the- The commercial success was due to the Velcro snaps on the product, not just Velcro snaps sitting out there in the marketplace. Right, and the Velcro- The commercial success may have been focused on the Velcro side snaps, right? And so that's what made everybody wanna run and buy these. But they're nonetheless buying that underlying product. That's right, your honor. And LeFleur was a training pan as well, and it had those same refastenable side seams. I mean, under the Ormco case, if the feature that's driving the commercial success was Velcro- So what's the reality is that you have the new thing, at least on the diaper, is the Velcro side panel, and that's what makes everybody very happy and wants to buy it, becomes very successful, and you say, well, unfortunately, that's obvious, right? This is the dilemma that's interesting here. So that commercial success is irrelevant. They were, Kimberly Clark was the first to commercialize it successfully. But you don't get a patent for being the first to commercialize it successfully. The technical idea of taking a training pan with sealed side seams and substituting- The commercial success to have the nexus has to tie up to what the invention was. It has to- So the nexus is what kills the commercial success here for purposes of being pertinent in an analysis. That's exactly right, Your Honor. So doesn't that sort of seem odd? Well, I mean, if the invention is really cool and neat, right, and that's the thing that people wanna run out and buy it for, and then you say, well, that was obvious, well, then commercial success for commercializing that which was, you thought, what the consumers thought was new is irrelevant. Well, Your Honor, it could be for a host of reasons. Basically, we have a situation where there's two prior patents that teach this refashionable seam, LaFleur and Witteland, and the fact that Kimberly Clark later took that same exact teaching and commercialized it doesn't change the teaching before. The teaching is still there. Patentability in the Supreme Court said this can't be based on that they were the first to successfully commercialize it, especially not in a situation here where the exact problem and the exact solution was in the prior art. Give me an example of commercial success that would be pertinent in the mix as to whether or not the invention was overall obvious. It's the Leo Pharma case that's cited in Kimberly Clark's brief. That's a perfect example. You have a situation where there was a drug, and I think the issue was sustained release. So you had a drug that did a job, and you wanted to give it some sustained release or some other property, and all the compounds were out there, but no one really recognized the problem of how to put the compounds together, and no one recognized that when you would do that, you would solve this problem. So a situation where the problem wasn't recognized and the solution wasn't recognized. Of course, all the compounds were there, and there was general teachings that they could be of some value, but at the end of the day, there was no appreciation of either the problem or the solution. There, there was tremendous commercial success, and on appeal, this court said, wait a minute, this is a classic case. We have secondary considerations to address an issue where we don't wanna hindsight, we don't wanna look at something through the hindsight lens. This is a class, Leofarm is a classic example of that. In hindsight, yes, of course, let's combine these drugs and everything else, and let's do it, but the fact that the prior didn't recognize the problem, didn't recognize the solution, plus all the commercial success clearly illustrated that in that situation, there was hindsight. There's no hindsight here. The problem was recognized, the solution was recognized. Yes, Kimberly Clark may have been the first to commercialize it successfully, and yes, the court found that. That doesn't change what LaFleur taught. It doesn't change what Whitlam taught. It just doesn't. Mr. Trella did not talk about claim four of the 221 patent, and I just wanted to say that there, there's also an order of steps argument, and the question is, is when do you invert? Do you invert before, do you invert after the folding? And here, again, there's no teaching in this patent of ever inverting before folding, absolutely no teaching, but even if there was, it wouldn't make a difference. Their own expert testified that the outward-facing hooks that claim four requires on a pant, first quality never has. They don't have it on a folded pant, and they don't have it on a pant before folding. Mr. Trella also didn't talk about the 119 patent. There, I think, the printed matter doctrine is implicated, and the issue is whether a visual segmentation element is printed matter. I think it's clear that it is. It's printed on the diaper, and then the test is, okay, does this visual segmentation element somehow contribute to patentability? And here, we're confusing the test. The test is, and it's from the Gulak case, whether there exists any new and unobvious functional relationship between the printed matter and the substrate, and the visual segmentation element is nothing more than a permanent graphic. Permanent graphics were in the prior art. Active graphics were in the prior art. What Kimberly Clark is really trying to do is dissect the picture and try and get patent protection for how the elements of the picture line up. Maybe that's good to get copyright protection for, but it does not pass the printed matter test. Are there any other questions? Thank you. Thank you. Thank you, Your Honor. I'll try to be brief, recognizing the time. On Claim 15, the argument that you need to have a completely folded pant in order to define the transport plane, that doesn't make any sense. The transport plane, by the terms of the claim, is defined as the machine direction. The machine direction is the direction in which these things are going. They're going in that direction, whether it's partially folded or completely folded. The fact that it refers to a machine transport plane doesn't make any difference. The machine drawings, that's a particular embodiment, and there's nothing in the claim language that requires the particular order of steps that the district court imposed. Now, as far as allowing us to raise the equivalence claim, it may be true that we knew first quality's position, but the district court had said, folded will be given its plain and ordinary meaning, and as Mr. George pointed out, we had expert testimony that plain and ordinary meaning did not require complete folding. We should have been allowed to pursue that equivalence claim. On the 067 patent, Mr. George said, you don't get a patent for being the first to market, and that's certainly true. But the fact that you were first to market, the fact that it was 16 years elapsed between the supposed prior art solution to this problem and the invention, this court has said in multiple cases that that lapse of time is an objective indicator of non-obviousness. So we're not saying we get a patent just because we were the first to have a commercially successful product, but it is an objective indicator of non-obviousness, and it should not have been resolved on summary judgment. It is also true, as Mr. George said, that the fact that we had commercial success, the fact that there was industry skepticism in copying, and the other objective, it doesn't change the teaching of the prior art, but it does shed light on the motivation to combine these different pieces of prior art, because it should cause the fact finder to say, well, wait a minute, if it was so obvious to take this feature from here, and take elastomeric sides from here, and bring them together, and it produces an enormously successful product, why didn't anybody do it for 16 years? That's precisely the reason you look at objective industry, to be able to put yourself back at the time of the invention, not engage in hindsight by using the patent, and then going to find the various components, that didn't happen here, and it should have. Just very briefly, claim four, again, if you look at the claim language, there's no requirement that inversion only come after folding, the claim does not specify an order, the process will work equally well either way, and finally, on the 119 patent, now, this visual separation element, there's visual segmentation element, there's no dispute that the prior art teachings did not include that element. It was defined by agreement of the parties as a visually distinguishable feature that separates the exterior of the absorbent article into two or more zones, and in particular, into at least one training zone, including the active object graphics, and at least one character zone, including the permanent graphics. There is nothing about that construction on its face that indicates that the printed matter doctrine  this is a physical separation of a physical structure, the outside surface of the pant, and in fact, if you look, it's bolstered by the claims that are at issue, because they specify precise dimensions for this area. It's gotta be 20 millimeters from here, and I think I'm gonna ask you to conclude. I will conclude, enjoy your lunch, Your Honor. Thank you. Thank you, we thank both counsel for the cases submitted that conclude the proceedings. All rise, the Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you. Logistics. Thank you.